=========================================================

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

USCA No. 22-2733
_____

UNITED STATES OF AMERICA,

Appellee,

v.

JEFFERY MOORE,

Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION
HONORABLE KAREN E. SCHREIER
UNITED STATES DISTRICT COURT JUDGE
_____

**APPELLANT'S BRIEF**
_____

Resolute Law Firm, PC
Angel Runnels
400 North Main Avenue, Suite 207
Sioux Falls, SD  57104
Telephone: (605) 275-4529
E-mail:  angel@resolutelaw.org

ATTORNEY FOR APPELLANT

=========================================================

## SUMMARY OF THE CASE

Defendant/Appellant Jeffery Darnell Moore (hereinafter "Moore") was charged by Indictment alleging two counts (Counts 1 and 2) of Conspiracy to Distribute a Controlled Substance 21 U.S.C. §§841(a)(1) and 846 and two counts (Counts 3 and 4) of Distribution of a Controlled Substance Resulting in Death 21 U.S.C. §841(a)(1). Moore was convicted by jury of three of the four counts in the Indictment. Moore was sentenced on Count 2 to 240 months of imprisonment and on Counts 3 and 4 to 420 months of imprisonment. All terms were ordered to be served concurrently. Moore now appeals the district court's erroneous evidentiary ruling and contends that the evidence was insufficient for the jury to convict him on any of the three counts.

## REQUEST FOR ORAL ARGUMENT

Moore requests 10 minutes of oral argument per side.

Appellate Case: 22-2733    Page: 2    Date Filed: 11/18/2022 Entry ID: 5219409

# TABLE OF CONTENTS

**Page(s)**

Summary of the Case ................................................................. i

Request for Oral Argument.......................................................... i

Table of Authorities ................................................................ iii

Jurisdictional Statement .............................................................. 1

Statement of Issues Presented for Review .................................... 2

Statement of the Case................................................................. 3

Summary of the Argument........................................................... 4

Argument................................................................................... 4

    **I.     THE DISTRICT COURT ERRED IN ADMITTING
EXHIBIT 19 (R. Doc. 80, at 10-27).**

    **II.    THE GOVERNMENT FAILED TO PROVE BEYOND A
REASONABLE DOUBT THAT DEFENDANT JOINED A
CONSPIRACY TO DISTRIBUTE A CONTROLLED
SUBSTANCE.**

    **III.   THE GOVERNMENT FAILED TO PROVE BEYOND
A REASONABLE DOUBT THAT THE FENTANYL
TAKEN BY EITHER VICTIM 1 OR VICTIM 2 WAS
DISTRIBUTED TO THEM BY DEFENDANT.**

Conclusion .............................................................................. 22

Certificate of Service ............................................................... 23

Certificate of Compliance .......................................................... 24

Addendum................................................................................ 25

Appellate Case: 22-2733    Page: 3    Date Filed: 11/18/2022 Entry ID: 5219409

# TABLE OF AUTHORITIES

**Page(s)**

## United States Court of Appeal Cases

United States v. Bell, 761 F.3d 900 (8th Cir. 2014) ......................... 2, 13, 17

United States v. Bordeaux, 436 F.3d 900 (8th Cir. 2006) .......................... 13

United States v. Briley, 319 F.3d 360 (8th Cir. 2003) ................................... 6

United States v. Colton, 742 F.3d 345 (8th Cir. 2014) ..................... 2, 13, 17

United States v. Donnell, 596 F.3d 913 (8th Cir. 2010) ............................ 16

United States v. Harris, 966 F.3d 755 (8th Cir. 2020) ........................... 2, 13

United States v. Henley, 766 F.3d 893 (8th Cir. 2014) ................................ 6

United States v. Mancillas, 580 F.2d 1301 (7th Cir. 1978) ........................ 16

United States v. Miller, 994 F.2d 441 (8th Cir. 1993) ............................. 2, 5

United States v. Prieskorn, 658 F.2d 631 (8th Cir. 1981) ................ 2, 13, 16

United States v. Roberts, 503 F.2d 453 (8th Cir. 1974) ............................ 2, 6

United States v. Robinson, 617 F.3d 984 (8th Cir. 2010) ............................. 6

United States v. Street, 531 F.3d 703 (8th Cir. 2008) .................................. 5

United States v. Vallie, 284 F.3d 917 (8th Cir. 2002) .................................. 6

## Statutes

18 U.S.C. §3231 ........................................................................................... 1

21 U.S.C. §841(a)(1) ................................................................................. i, 1

Appellate Case: 22-2733    Page: 4    Date Filed: 11/18/2022 Entry ID: 5219409

**Page(s)**

21 U.S.C. §846 ............................................................................. i, 1

28 U.S.C. §1291 ............................................................................. 1

iv

# JURISDICTIONAL STATEMENT

The Decision Appealed:  Moore appeals from the Judgment and Commitment filed against him on August 12, 2022 (R. Doc. 95) in the District Court of South Dakota, Southern Division.  The Judgment and Commitment was imposed by the Honorable Karen E. Schreier, United States District Court Judge for the District of South Dakota, upon the jury's verdict of guilty at trial (R. Doc. 75) of Count 2, Conspiracy to Distribute a Controlled Substance 21 U.S.C. §§841(a)(1) and 846 and Counts 3 and 4 of Distribution of a Controlled Substance Resulting in Death 21 U.S.C. §841(a)(1).

District Court Jurisdiction:  The United States District Court for the District of South Dakota had jurisdiction in this prosecution under 18 U.S.C. §3231.

Appellate Court Jurisdiction:  This Court has jurisdiction over Mr. Moore's appeal pursuant to 28 U.S.C. §1291.

Notice of Appeal:  Mr. Moore's Notice of Appeal was timely filed on August 15, 2022 (R. Doc. 96).  His appeal was docketed in this Court on August 16, 2022.

In this brief, Appellant, Jeffrey Moore will be referred to as "Moore."  The Appellee, United States will be referred to as "the Government."  References to the docket entries in the District Court Clerk's Record will be designated as "R. Doc." followed by the appropriate docket entry number.  References to the Jury Trial will

1

be designated as "JT" followed by the appropriate volume and page number. References to the sentencing hearing will be designated as "Sent. TR" followed by the page number. References to the exhibits will be designated as "R. Doc." followed by the appropriate page number.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. **THE DISTRICT COURT ERRED IN ADMITTING EXHIBIT 19 (R. Doc. 80, at 10-27) OVER DEFENDANT'S OBJECTION.**

### Authorities

United States v. Miller, 994 F.2d 441 (8th Cir. 1993)

United States v. Roberts, 503 F.2d 453 (8th Cir. 1974)

2. **THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT JOINED A CONSPIRACY TO DISTRIBUTE A CONTROLLED SUBSTANCE.**

### Authorities

United States v. Prieskorn, 658 F.2d 631 (8th Cir. 1981)

United States v. Harris, 966 F.3d 755 (8th Cir. 2020)

3. **THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE FENTANYL TAKEN BY VICTIM 1 OR VICTIM 2 WAS DISTRIBUTED TO EITHER OF THEM BY DEFENDANT.**

### Authorities

United States v. Bell, 761 F.3d 900 (8th Cir. 2014)

United States v. Colton, 742 F.3d 345 (8th Cir. 2014)

2

## STATEMENT OF THE CASE

On July 20, 2020, defendant/appellant Moore was indicted in a four count Indictment charging in Counts 1 and 2 Conspiracy to Distribute a Controlled Substance and in Counts 3 and 4 of Distribution of a Controlled Substance Resulting in Death (R. Doc. 1). The defendant entered pleas of not guilty on all counts. A jury trial was held on May 9-13, 2022, before the Honorable Karen E. Schreier, District Judge. The Jury returned verdicts of "guilty" as to Counts 2, 3, and 4 of the Indictment and not guilty to Count 1 of the Indictment. (R. Doc. 75). Moore was sentenced on August 10, 2022, by the Honorable Karen E. Schreier, United States District Court Judge for the District of South Dakota. Moore was sentenced on Count 2 to 240 months of imprisonment and on Counts 3 and 4 to 420 months of imprisonment. All terms were ordered to be served concurrently (Sent. TR 30; R. Doc. 95).

Moore now appeals raising three arguments. Moore argues first that the District Court erred in admitting electronic evidence taken from a cell phone because the Government failed to lay adequate foundation due to inadequate chain of custody evidence. Additionally, Moore argues that the Government failed to prove beyond a reasonable doubt that he joined a conspiracy to distribute controlled substances. Finally, the Government failed to prove beyond a reasonable

3

doubt that the Fentanyl taken by Victim 1 or Victim 2 was distributed to either of them by Defendant.

## SUMMARY OF THE ARGUMENT

The district court's ruling to admit the text messages (JT Vol. 1, at 70, 97, 118, 124, and 125) was inconsistent with Eighth Circuit case law which requires the offeror of the evidence to present adequate testimony that the condition of the evidence is substantially unchanged. Moore argues that the District Court erred in admitting electronic evidence taken from a cell phone because the evidence was clear that the electronic evidence had been altered. Next, Moore argues that the Government failed to prove beyond a reasonable doubt that he joined a conspiracy to distribute controlled substances because the evidence showed simple buying and selling agreements between Moore and the person who sold to him and Moore and the person he sold to. Finally, the Government failed to prove beyond a reasonable doubt that the Fentanyl taken by Victim 1 or Victim 2 was distributed to either of them by the Defendant because intervening events provided more than enough reasonable doubt and no reasonable jury could have convicted the Defendant.

## ARGUMENT

1. **WHETHER THE DISTRICT COURT ERRED IN ADMITTING EXHIBIT 19 (R. Doc. 80, at 10-27) OVER DEFENSE COUNSEL OBJECTION.**

4

<u>Standard of Review</u>

The review of the district court's interpretation and application of the rules of evidence is well settled and is outlined as follows:

> "We review a district court's interpretation and application of the rules of evidence de novo and its evidentiary rulings for abuse of discretion." <u>United States v. Street</u>, 531 F.3d 703, 708 (8th Cir. 2008).

<u>Argument</u>

"Where a . . . physical object is offered as evidence in a criminal prosecution, an adequate foundation for the admission of that object requires testimony first, that such object is the same object which was involved in the alleged incident, and that the condition of that object is substantially unchanged." <u>United States v. Miller</u>, 994 F.2d 441, 443 (8th Cir. 1993). "The district court may admit a piece of physical evidence if it is satisfied that there is a reasonable probability [that] such evidence has not been changed or altered." <u>Id</u>. And, under our precedent, "the integrity of such evidence is presumed to be preserved unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with." <u>Id</u>.

"The criteria governing admission of exhibits into evidence is that there must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed. That determination is to be made by the trial judge, not the jury, and may not be overturned except for a clear

5

abuse of discretion. Factors to be considered in making the determination of admissibility include the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of others tampering with it. If upon the consideration of such factors, the trial judge is satisfied that in reasonable probability the article has not been changed in any important respect, he may permit its introduction in evidence." United States v. Roberts, 503 F.2d 453 (8th Cir. 1974)

When reviewing arguments challenging the chain of custody of evidence, the 8th Circuit routinely rules in favor of admissibility based on the absence of any evidence that the challenged evidence was altered. United States v. Robinson, 617 F.3d 984 (8th Cir. 2010), United States v. Briley, 319 F.3d 360 (8th Cir. 2003), United States v. Vallie, 284 F.3d 917 (8th Cir. 2002). United States v. Henley, 766 F.3d 893 (8th Cir. 2014).

The evidence at Moore's trial was not sufficient to support a finding that the condition of the evidence inside the phone was substantially unchanged. In fact, the opposite was proven. Erin McCaffrey testified that she is a forensic specialist, working in the crime lab with the Sioux Falls Police Department. (JT, Vol. 1, at 34-35) She responded to the scene of the death of Wehrkamp, the victim listed in Count 3, on November 3rd of 2018. (JT, Vol. 1, at 35, 40) Ms. McCaffrey described the electronics taken into evidence on November 3rd, which included

two cell phones and testified that the evidence collected was "sealed in packaging and placed into the evidence vault at the Law Enforcement Center." (JT, Vol. 1, at 36-37, 62) Next, she testified to the process which the crime lab uses to document the release of evidence being transferred outside the evidence vault. (JT, Vol. 1, at 63) Ms. McCaffrey identified a document as a transfer receipt from the Sioux Falls crime lab that stated on November 6th, 2018, the four electronic devices, including both cell phones were released to Eldon DeBoer. (JT, Vol. 1, at 63-65)

Amy Wagner testified at the trial. She is an evidence technician at the Sioux Falls Police Department. (JT, Vol. 1, at 103) She testified that on November 3rd of 2018, Erin McCaffrey entered two cell phones, a laptop and a tablet into evidence related to the death of Wehrkamp. (JT, Vol. 1, at 104-105) On November 6th, at the direction of Detective Mertes, the two cell phones, laptop and the tablet were released to Eldon DeBoer. The next record of evidence in the case appeared on November 14th, 2018, when a cell phone extraction was entered into evidence. (JT, Vol. 2, at 105-106) Amy Wagner testified that after the phone was released to Eldon DeBoer on November 6th, the phone itself was never processed back into evidence.

Eldon DeBoer testified at trial. He stated that Wehrkamp is his daughter, and he was at her home at the time of her death and that officers gave Wehrkamp's phone to him. (JT, Vol. 1, at 22-23) Under cross exam, Mr. DeBoer remembered

that he had actually traveled to the Law Enforcement Center to pick up the phone on a later date. (JT, Vol. 1, at 28) On direct exam, he stated that, once he had the phone in his possession, he attempted to unlock the phone using the passcode. However, he tried unsuccessfully too many times and the phone reset. (JT, Vol. 1, at 22) The phone offered to send a code to Wehrkamp's email address to log into the phone and he used that code and was then able to access text messages now viewable on the phone. (JT, Vol. 1, at 22-23) He then gave the phone to law enforcement. (JT, Vol. 1, at 23)

Anthony Buss testified at the trial. He stated that he conducted a phone extraction on a phone related to the death of Wehrkamp on November 13, 2018, and there were messages on the phone. (JT, Vol. 1, at 70) Anticipating testimony about the substance of those messages, Defense counsel objected and was overruled. (JT, Vol. 1, at 70) Counsel requested permission to voir dire the witness and the request was denied. (JT, Vol. 1, at 70). Buss proceeded to testify to the procedures he used in the phone extraction and the importance of following procedure so as not to "change the evidence." (JT, Vol. 1, at 69) He further stated that "as a phone boots up, starts down, files get added, files could get deleted from a phone." (JT, Vol. 1, at 72). Buss stated that "it's important to not mess with the original chunk of evidence as much as possible." (JT, Vol. 1, at 72) When asked to elaborate on what "original evidence" means, he agreed that the evidence should

remain as close as possible as it was when it originated in police custody. (JT, Vol. 1, at 72-73) Buss agreed that turning a phone off and on can cause data to change. (JT, Vol. 1, at 73) Further, Buss confirmed that police often place phones into "airplane mode" when they are taken into police custody. (JT, Vol. 1, at 73) When asked about the importance of placing a phone in "airplane mode," he explained that, "as a phone makes contact with a network, files can come and go, messages can come, messages can be sent from it if someone has contact with that phone itself. They can be remotely wiped if they're not put into airplane mode." (JT, Vol. 1, at 73)

Buss testified that a hard reset results in the phone's operating system not knowing where anything is on a phone and that the phone is returned to factory settings. (JT, Vol. 1, at 74) Buss agreed that when a phone is reset, data is lost. Buss testified that if a backup program was installed, it would only recover data that had been previously backed up. (JT, Vol. 1, at 75-80) He confirmed that after a hard reset, there was no way to know anything about the backup program, whether or when a phone was backed up, nor what data was lost or retrieved. (JT, Vol. 1, at 77-79) Buss also confirmed that in a hard reset, texts can be lost. (JT, Vol. 1, at 81)

Detective Patrick Mertes testified at the trial about the electronics seized during the investigation of Wehrkamp's death. He stated that on November 5th of 2018, he removed a cell phone from evidence to see if he could get into it. (JT,

Vol. 2, at 110) He took it to Detective Buss; however, they were unable to get into the phone because it was password protected. (JT, Vol. 2, at 110) Mertes checked the phone back into evidence on November 6th. (JT, Vol. 2, at 110) Additionally, he contacted Eldon DeBoer to inform him that he could have the electronics back. (JT, Vol. 2, at 110) Next, Mertes testified that on November 12th, Eldon DeBoer contacted him and said he did a factory reset on the phone and it pulled messages from the cloud. (JT, Vol. 2, at 110-111) DeBoer then brought the phone to the Law Enforcement Center, and it was given to Detective Buss. (JT, Vol. 2, at 111) A DVD of a phone extraction was entered into law enforcement evidence on the 14th. (JT, Vol. 2, at 111) The phone was then given back to Mr. DeBoer on the 14th. (JT, Vol. 2, at 111) Detective Mertes testified that after the phone was released the first time, on November 6th to Mr. DeBoer, it was never entered back into evidence, and he had no record of who had the phone between November 12th and the 14th. (JT, Vol. 2, at 114)

Officer Peter Blankenfield testified at the trial that he assisted Detective Mertes with analyzing information taken from a phone related to the death of Wehrkamp including text messages. (JT, Vol. 2, at 125) Those messages spanned a period of several months in the fall of 2018. (R. Doc. 80, at 10-27) He then proceeded to testify, after an overruled objection of Defense counsel about the substance of those messages. (JT, Vol. 2, at 119-124)

10

Blankenfeld testified that he examined the data taken off the phone and that there was no telephone call history on the phone before November 6th, 2018. However, a call history was available for calls after November 6th. (JT, Vol. 2, at 181-183) He also confirmed that there were no social media applications on the phone. (JT, Vol. 2, at 191)

At trial, defense counsel objected to the admission of the text messages arguing that Exhibit 19 (R. Doc. 80, at 10-27) lacked foundation, that the chain of custody was not established because the evidence was not in the same condition as it was during its owner's use and the government was not able to show that the condition of the phone was substantially unchanged. The Defense objection was overruled. (JT, Vol. 1, at 70, 97 and JT, Vol. 2, at 118, 124, and 125).

The testimony was clear that the phone had undergone a factory reset, and during that reset, all call history was deleted from the phone. Additionally, there was an absence of any social media applications. Evidence at the jury trial substantially supported that a factory reset results in deleted data, including deleted text messages. There was also evidence that the only messages on the phone would be some messages that survived the reset and had been backed up, yet there was no evidence about the backup program, procedure, or timing. Therefore, the evidence in the phone was changed or altered. The integrity of the phone was not preserved. There was direct evidence that the phone was tampered with when it was released

Appellate Case: 22-2733     Page: 16     Date Filed: 11/18/2022 Entry ID: 5219409

to a civilian who reset the phone and thereby deleted its entire contents. Although it appears that some messages were subsequently loaded onto the phone, evidence at trial supported that there was no way to know which messages were loaded and which were not. Testimony supported that only messages sent after the user completed a backup would potentially be available and there is no way to know when a backup occurred.

The government was required to show that the evidence in the phone was in substantially the same condition as when the phone was taken from the scene. Here, the phone was released to Wehrkamp's father. The evidence inside the phone was not preserved. Testimony at trial indicated that police typically go as far as to place phones into "airplane mode" because even turning a phone on and off can change its data and every protection is put in place as to not change the phone's contents. Telephone data is clearly very sensitive. Here, the most extreme change possible occurred with the phone, it was reset and returned to factory settings. It was changed in every important respect and therefore the evidence lacked reliable foundation and the contents of the phone should have been excluded.

**2. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT JOINED A CONSPIRACY TO DISTRIBUTE A CONTROLLED SUBSTANCE.**

12

<u>Standard of Review</u>

The Court reviews "de novo" the sufficiency of the evidence to sustain a conviction, viewing the evidence in a light most favorable to the verdict and accepting all reasonable inferences supporting the verdict." <u>United States v. Bell</u>, 761 F.3d 900, 906-907 (8th Cir. 2014). Furthermore, this Court will overturn Moore's conviction "only if no reasonable jury could have found him guilty beyond a reasonable doubt." <u>United States v. Colton</u>, 742 F.3d 345, 348 (8th Cir. 2014) (*per curiam*). The standard of review for sufficiency of the evidence challenges is strict. <u>Id</u>., at 348.

<u>Argument</u>

"'To establish the existence of a conspiracy, the government must prove that: 1) there was a conspiracy to distribute a controlled substance; 2) the defendant knew of the conspiracy; and 3) the defendant knowingly participated in the conspiracy.'" <u>United States v. Harris</u>, 966 F.3d 755, 760 (8th Cir. 2020) quoting <u>United States v. Bordeaux</u>, 436 F.3d 900, 903 (8th Cir. 2006) Each of these elements must be proven beyond a reasonable doubt. <u>U.S. v. Prieskorn</u>, 658 F.2d 631,634 (8th Cir. 1981)

Charles Davis testified. He stated that he is a dealer, and he sold to Jeff. (JT, Vol. 3, at 354) Davis knows Jeff as a drug user. (JT, Vol. 3, at 355) He testified that he sold Jeff user amounts. (JT, Vol. 3, at 354) He testified to having no

13

knowledge about whether Jeff was reselling the user amounts he purchased from Davis. (JT, Vol. 3, at 356) This was a buyer and seller relationship. Davis testified that he was providing drugs to Jordan Ugalde who helped Davis by then reselling those drugs. (JT, Vol. 3, at 354 and 362-363)

Jordan Ugalde also testified. He stated that he purchased user amounts from Moore. (JT, Vol. 3, at 368, 369) This occurred "not very often. Every blue moon." (JT, Vol. 3, at 368) This is a buyer and seller relationship. Ugalde also said that he thinks Moore has a dealer relationship with Charles Davis. (JT, Vol. 3, at 370) However, Charles Davis, the actual person who would know, testified under oath that he only knows Moore as a user who buys a user amount. Additionally, when testifying about matters with any specificity, Ugalde consistently testified that Moore only ever had small user amounts to sell to him. (JT, Vol. 3, at 368, 369, 370,)

Ugalde testified that there was a woman who would be with Moore, and the Government asked him in many ways to state Moore's relationship with the woman. He stated that he believed they had a user relationship and made some guesses about what dealing type behavior that entailed. (JT, Vol. 3, at 373) Law Enforcement watched Moore for a year and a half and only once did they ever see Moore with the woman.

Next, text messages between Wehrkamp and Moore show that they were

14

friends, she used terms of endearment toward him. (JT, Vol. 2, at 129, 134, 135, 136, 139) Evidence at trial showed that Wehrkamp and Moore spent time together as friends, were intimate, and used together. (JT, Vol. 2, at 130, 139, 140-41, 145-46) Evidence showed that Moore was always waiting to hear back from someone who he purchased from, he does not tend to have drugs available on hand. (JT, Vol. 2, at 128-164) Evidence at the trial showed that Moore was an addict. Evidence showed he lived in poverty. (R. Doc. 82, at 13-14) Moore was simply buying and selling drugs and not any agreement to join a drug selling conspiracy.

Regarding Greg Nordquist, much like his interactions with Wehrkamp, evidence showed there was a buyer and seller agreement between Moore and Nordquist and between Moore and whoever he purchased from. (JT, Vol. 3, at 446-451, 468-481) Moore did not have drugs quickly available and had to wait to make his own purchase. (JT, Vol. 3, at 446-451, 468-481) The evidence showed that Moore is an addict who purchases drugs for himself and a little more for Nordquist. Again, Moore was simply buying and selling drugs. The evidence did not show any arrangement between Moore and others to sell drugs.

Jeffrey Moore was being investigated from March of 2019 through 2020. Three trash pulls showed evidence of drug paraphernalia and drug use. (JT, Vol. 3, at 432) A search was conducted pursuant to a search warrant of Moore's home in June of 2019, and only drug use evidence was found. (JT, Vol. 3, at 278, JT, Vol.

3, at 434-436). Moore was also stopped twice, June 5, 2019 and January 8, 2020, while driving and his vehicle was searched, and both times only a user amount of controlled substance was uncovered. (JT, Vol. 3, at 273, 483) Evidence of pictures from Moore's home showed he lived in poverty and the absence of any owe sheets, nor was there evidence of financial gain, was presented. (R. Doc. 82, at 13-14) While some evidence of drug selling exists, the evidence is significant only for small buyer seller agreements to fund his own addiction and not evidence of membership in a conspiracy.

The Government presented evidence that Moore purchased drugs from people. The Government also presented evidence that Moore sold drugs to people. "Because the crime of conspiracy requires a concert of action among two or more persons for a common purpose, the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction." United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981) (quoting United States v. Mancillas, 580 F.2d 1301, 1307 (7th Cir. 1978). Unlike other cases, the amounts described in the evidence in Moore's trial were consistently small and therefore were not obviously meant for resale. Consequently, holdings like that found in Donnell, do not apply here. "Where the evidence shows multiple transactions involving large amounts of drugs, we have held this is sufficient to support a conclusion that the drugs were purchased for resale." United States v.

16

Donnell, 596 F.3d 913, 925 (8th Cir. 2010).

Law Enforcement watched Moore for a year and a half and searched his home and vehicle and the only evidence of drugs found was a small user amount of controlled substance and predominantly paraphernalia consistent with an end user. Large amounts of packaging materials and cutting agents associated with a dealer were not located.

3. **THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE FENTANYL TAKEN BY VICTIM 1 AND VICTIM 2 WAS DISTRIBUTED TO EITHER OF THEM BY DEFENDANT.**

Standard of Review

The Court reviews "de novo" the sufficiency of the evidence to sustain a conviction, viewing the evidence in a light most favorable to the verdict and accepting all reasonable inferences supporting the verdict." United States v. Bell, 761 F.3d 900, 906-907 (8th Cir. 2014). Furthermore, this Court will overturn Moore's conviction "only if no reasonable jury could have found him guilty beyond a reasonable doubt." United States v. Colton, 742 F.3d 345, 348 (8th Cir. 2014) (*per curiam*). The standard of review for sufficiency of the evidence challenges is strict. Id., at 348.

Argument

Moore next argues that the evidence at trial was insufficient for the jury to

17

find beyond a reasonable doubt that he distributed the Fentanyl that caused the death of either Wehrkamp or Savage.

Regarding Wehrkamp, the victim listed in Count 1, messages indicate that she was extremely concerned about getting access to drugs on the evening of November 3rd, 2018. (JT, Vol. 2, at 161) Her messages clearly show desperation and an immediate need to find drugs around 7:00 p.m. on November 3rd. (JT, Vol. 2, at 161) No messages verify that she was ever able to get in touch with Moore that evening. (JT, Vol. 3, at 161) Wehrkamp needed to use drugs on the evening of November 3rd, yet she didn't pass away from drugs she used that evening. The evidence at trial indicated that her overdose took place eighteen hours later, just before Mr. DeBoer visited her home at around 1:00 p.m. on November 4th. EMT's arrived just after 1:00 p.m. (JT, Vol. 3, at 5-6) The Fentanyl level in Wehrkamp's body was ten times that which is considered fatal. (JT, Vol. 3, at 401-405) Levels above 3 nanograms per milliliter are fatal. Wehrkamp's level was 43.9 nanograms per milliliter. (JT, Vol. 3, at 401-405) There was no dirty needle found at the scene. (JT, Vol. 1, at. 47) There was no paraphernalia alleged to have been in a container where Wehrkamp held the drug prior to use. (JT, Vol. 3, at 37-40) Who had been in the home with her? Wehrkamp's phone had been substantially altered and so was missing any call history, so it is unknown who Wehrkamp spoke to on the phone at any time, and most importantly, during the eighteen missing hours of

18

data. The evidence was also missing any other text history and we know due to the hard reset that messages can be deleted. The phone was missing any evidence of social media conversations due to the hard reset. Testimony at the trial proved that Wehrkamp had consumed alcohol at some time in the hours before her death. (JT, Vol. 3, at 401) Her stomach was empty, so her blood alcohol level was decreasing. (JT, Vol. 3, at 415-418) Who did she drink alcohol with during the overnight? Where did she drink alcohol? No pictures from anywhere in the home show the presence of alcohol consumed in the home. (R. Doc 82, at 1, 4-10)

The absence of any information about the life that Wehrkamp lived during her last eighteen hours before she overdosed provided more than enough doubt to acquit Moore. If she had purchased the Fentanyl that had the strength to cause death and a level of 43.9 nanograms per milliliter in her blood from Moore on the evening of November 3rd, she would have passed away the evening of November 3rd. The evidence shows that Wehrkamp spent time with someone, drank alcohol, and received a batch of drugs from someone in the early hours or morning of November 4th, 2018, and it was not Jeffrey Moore.

Similarly, the absence of evidence and the presence of intervening events supply reasonable doubt in the death of James Savage, the victim listed in Count 4. The testimony was that Savage was looking everywhere for drugs the evening of his death, June 15th, 2019. (JT, Vol. 2, at 330) Savage had decided to take his own

Appellate Case: 22-2733     Page: 24     Date Filed: 11/18/2022 Entry ID: 5219409

life by purposefully overdosing. (JT, Vol. 2, at 210) Savage historically had access to Fentanyl and had been a dealer of Fentanyl himself. (JT, Vol. 2, at 308) Testimony confirmed that Savage was a Snapchat user. (JT, Vol. 2, at 222) Gregory Nordquist testified that he was one of the sources of drugs Savage contacted that evening. Nordquist and Savage had not stayed in contact for years prior to June 15, 2019. (JT, Vol. 2, at 297-299) Nordquist testified that while Nordquist was waiting to get drugs for Savage the evening of June 15th, 2019, Savage was not available to hang out with Nordquist. (JT, Vol. 2, at 304) The reason for Savage's unavailability is unknown. There was no evidence concerning who Savage was with and what Savage was doing during this time frame just prior to his death. Nordquist testified that eventually he supplied drugs to Savage the evening of June 15, 2019, at Savage's home. (JT, Vol. 2, at 307-308) He testified that he consumed the same drug as Savage, and then fell asleep. (JT, Vol. 2, at 308) He described sleeping for an extended period. (JT, Vol. 2, at 308-310) Nordquist testified that when he woke up, Savage was overdosing. (JT, Vol. 2, at 327) Rather than call for help, Nordquist removed drug evidence from Savage's home and stole Savage's cell phone. He disposed of Savage's cell phone by throwing it over a bridge and into a river. (JT, Vol. 2, at 327-28) He disposed of the evidence to make it look like he hadn't been there. (JT, Vol. 2, at 331) It was five months after Savage's death that Nordquist arranged a proffer with an

agreement to provide law enforcement with a seller to charge for the death of Mr. Savage. (JT, Vol. 2, at 326) That seller was Moore.

Nordquist had every reason to lie about his interactions with Moore. Nordquist's motives were clear during the trial when he added into testimony that he tried to talk Savage out of using that night. (JT, Vol. 2, at 300) Yet, his messages with Savage were entered into evidence and they are nothing but encouraging Savage to use. (JT, Vol. 2, at 302-304) An attempt to distance himself from fault and to blame Moore is obvious. Next, it is likely that Savage was able to secure drugs from one of the other sources he reached out to looking for drugs that evening. The evidence showed that Nordquist removed drug evidence from the apartment, yet an empty baggie that tested positive for Fentanyl was found on the floor. There are two likely possibilities that provide more than enough reasonable doubt. Savage, unbeknownst to Nordquist, took an amount of Fentanyl he secured from another source which caused his death. The empty baggie that held it was found on the floor. Or Nordquist, in an attempt to provide a fall guy to the Government, blamed Moore, a person the Government was all too willing to accept, given his prior relationship with Wehrkamp.

All the facts available in evidence present more than enough doubt to acquit Moore as the person who distributed Fentanyl to Savage.

Appellate Case: 22-2733    Page: 26    Date Filed: 11/18/2022 Entry ID: 5219409

## CONCLUSION

Based upon the arguments and authorities presented, Moore respectfully submits that Exhibit 19 (R. Doc. 80, at 10-27) should have been excluded, and there was insufficient evidence to sustain the guilty verdicts with respect to Counts 2, 3, and 4 of the Indictment. Appellant respectfully requests that the Judgments be vacated.

Dated this 17th day of November 2022.

*/s/Angel Runnels*
Angel Runnels
400 N. Main Avenue, Suite 207
Sioux Falls, SD  57104
(605) 275-4529
angel@resolutelaw.org
Attorney for Jeffery Darnell Moore

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

In addition, I certify the electronic version of the foregoing has been scanned for viruses using Windows Defender, and that the scan showed the electronic version of the foregoing is virus-free.

*/s/ Angel Runnels*
Angel Runnels
Resolute Law Firm, PC
400 N. Main Avenue, Suite 207
Sioux Falls, SD 57104
(605) 275-4529
angel@resolutelaw.org
Attorney for Appellant Jeffery Moore

23

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that Microsoft Word, version 16.0.15726.20202 included in the Microsoft 365 Applications for Enterprise package, typeface Times New Roman, font 14 was used in the preparation of the foregoing Appellant's Brief and that the word count done pursuant to the word processing system shows that there are 5254 words in the foregoing Appellant's Brief.

Dated this 17th day of November, 2022.

*/s/ Angel Runnels*
Angel Runnels
Resolute Law Firm, PC
400 N. Main Avenue, Suite 207
Sioux Falls, SD  57104
(605) 275-4529
angel@resolutelaw.org
Attorney for Appellant Jeffery Moore

24